**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| CATALYST PAPER CORPORATION, <u>et al.</u>[1] | Case No. 16-12419 (CSS) |
| Debtors in a foreign proceeding. | (Joint Administration Requested) |

**FOREIGN REPRESENTATIVE'S MEMORANDUM OF LAW
IN SUPPORT OF VERIFIED CHAPTER 15 PETITIONS AND
<u>ORDERS GRANTING PROVISIONAL AND FINAL RELIEF</u>**

---

[1] The chapter 15 debtors incorporated in Canada and/or in the province of British Columbia (collectively, the "<u>Canadian Debtors</u>"), along with the last four digits of each Canadian Debtor's Canadian business number, are: Catalyst Paper Corporation (1171); Catalyst Paper (6288); Catalyst Pulp Operations Limited (4565); Catalyst Pulp Sales Inc. (4021); Catalyst Pulp and Paper Sales Inc. (2085); and Pacifica Poplars Ltd. (6048). The chapter 15 debtors incorporated in the United States (collectively, the "<u>U.S. Debtors</u>"), along with the last four digits of each U.S. Debtor's federal tax identification number, are: Catalyst Paper Holdings Inc. (7177); Catalyst Paper Operations Inc. (7105); Catalyst Paper (Snowflake) Inc. (7015); Catalyst Paper (USA) Inc. (6890); Pacifica Papers US Inc. (7595); Pacifica Papers Sales Inc. (7594); Pacifica Poplars Inc. (9597); and Catalyst Paper Recycling Inc. (8358). The Canadian Debtors and the U.S. Debtors are referred to herein, collectively, as the "<u>Debtors</u>." The Debtors' executive headquarters are located at: 2nd Floor, 3600 Lysander Lane, Richmond, BC V7B 1C3, Canada.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................7

FACTUAL BACKGROUND..................................................................................10

ARGUMENT ..........................................................................................................11

A.   The CBCA Proceeding Is Entitled to Recognition as a Foreign Main Proceeding. ....11

   1.   The Chapter 15 Cases Satisfy the Requirements for Recognition Under Chapter 15 of the Bankruptcy Code. ..................................................................11

      a.   Venue Is Proper in this District........................................................11

      b.   The CBCA Proceeding Is a "Foreign Proceeding."..........................13

      c.   CPC Is a Proper "Foreign Representative."......................................17

      d.   The Foreign Representative Filed Proper Documentation..............18

      e.   The Verified Petition Is Consistent with the Purpose of Chapter 15..............19

   2.   The CBCA Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code. ..................................................................................20

   3.   In the Alternative, the CBCA Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code with Respect to the Canadian Debtors, and a "Foreign Nonmain Proceeding" Under the Bankruptcy Code with Respect to the U.S. Debtors..........................................................................................23

   4.   Recognizing the CBCA Proceeding as a Foreign Main Proceeding Is Consistent with the Purpose of Chapter 15 and Public Policy. ................................25

   5.   Specific Request for Relief Pursuant to Section 1521 of the Bankruptcy Code Is Warranted and Appropriate..................................................................29

B.   The Provisional Relief Requested by the Foreign Representative Is Within the Scope of Section 1519 of the Bankruptcy Code and Is Appropriate Under the Circumstances. ..................................................................................30

   1.   The Relief Requested Is Authorized by Sections 1519(a)(1)–(a)(3), 1521(a)(7), and 105(a). ..................................................................................31

   2.   The Relief Requested Herein Is Necessary and Appropriate to Prevent Irreparable Harm. ..................................................................................33

      a.   Substantial Likelihood of Foreign Recognition...............................33

      b.   The Debtors Will Potentially Suffer Irreparable Injury if the Provisional Relief Order Is Not Entered...........................................................................34

      c.   There Will Be Little to No Harm to Others if the Relief Is Granted. ..............36

      d.   Granting the Requested Relief Is Manifestly in Line with U.S. Public Policy.39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re ABC Learning Ctrs. Ltd.,
  445 B.R. 318 (Bankr. D. Del. 2010), aff'd, 728 F.3d 301 (3d Cir. 2013) ..............................17

In re Altos Hornos de Mexico, S.A.B. de C.V.,
  Case No. 16-11890 (KG) (Bankr. D. Del. Aug. 17, 2016) ......................................................34

In re Arctic Glacier Int'l Inc.,
  Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) ......................................................34

In re Banco Nacional de Obras y Servicios Publicos, S.N.C.,
  91 B.R. 661 (Bankr. S.D.N.Y. 1988) ......................................................................................36

Bavelis v. Doukas (In re Bavelis),
  453 B.R. 832 (Bankr. S.D. Ohio 2011) ...................................................................................14

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007) .......................................................................20, 22, 41

In re Betcorp Ltd.,
  400 B.R. 266 (Bankr. D. Nev. 2009) .................................................................................17, 23

In re British Am. Ins. Co.,
  425 B.R. 884 (Bankr. S.D. Fla. 2010) .....................................................................................17

In re British Am. Isle of Venice (BVI), Ltd.,
  441 B.R. 713 (Bankr. S.D. Fla. 2010) .....................................................................................17

In re Catalyst Paper Corp.,
  Case No. 12-10221 (Bankr. D. Del. Mar. 5, 2012)....................................................8, 25, 34

Chen v. Ernst & Young Inc. (In re Nortel Networks Corp.),
  2013 U.S. Dist. LEXIS 162887 (D. Del. Nov. 15, 2013) .......................................................40

In re Cinram Int'l Inc.,
  Case No. 12-11882 (KJC) (Bankr. D. Del. June 26, 2012) ....................................................34

Clear Channel Outdoor, Inc. v. City of L.A.,
  340 F.3d 810 (9th Cir. 2003) ...................................................................................................35

Cornfeld v. Investors Overseas Servs., Ltd.,
  471 F. Supp. 1255 (S.D.N.Y. 1979)........................................................................................28

In re Elpida Memory, Inc.,
  Case No. 12-10947 (Bankr. D. Del. Mar. 21, 2012)....................................................34

In re Essar Steel Algoma Inc.,
  Case No. 14-11730 (BLS) (Bankr. D. Del. Aug. 22, 2014)........................................19, 33, 34

Frank v. Neufeld (In re Neufeld),
  No. 12-02177, 2012 Bankr. LEXIS 5430 (Bankr. M.D. Pa. Nov. 16, 2012) ........................14

In re Gercke,
  122 B.R. 621 (Bankr. D.D.C. 1991) .......................................................................37

In re Global Ocean Carriers Ltd.,
  251 B.R. 31 (Bankr. D. Del. 2000) .........................................................................15

In re Indep. Eng'g Co.,
  232 B.R. 529 (B.A.P. 1st Cir.) ..............................................................................15

In re Innua Canada Ltd.,
  Case No. 09-16362 (DHS) (Bankr. D.N.J. Mar. 25, 2009) ........................................34

In re Innua Canada Ltd.,
  No. 09-16362 (DHS), 2009 WL 1025090 (Bankr. D.N.J. Apr. 15, 2009) ....................20, 21

In re Ionosphere Clubs, Inc.,
  922 F.2d 984 (2d Cir. 1990)..................................................................................27

In re Irish Bank Resolution Corp. Ltd.,
  No. 13-12159 (CSS), 2014 WL 9953792 (Bankr. D. Del. Apr. 30, 2014),
  aff'd, 538 B.R. 692 (D. Del. 2015) .......................................................................16, 22

Jaffe v. Samsung Elecs. Co.,
  737 F.3d 14 (4th Cir. 2013) .................................................................................40

In re Lines,
  81 B.R. 267 (Bankr. S.D.N.Y 1988)......................................................................35, 37

In re MAAX Corp.,
  Case No. 08-11443 (CSS) (Bankr. D. Del. July 15, 2008) ........................................34

In re Mega Brands Inc.,
  Case No. 10-10485 (CSS) (Bankr. D. Del. Mar. 23, 2010)........................................19, 26

In re Mid Atl. Retail Grp., Inc.,
  No. 07-81745, 2008 Bankr. LEXIS 790 (Bankr. M.D.N.C. Jan. 4, 2008) ....................14

In re Millennium Glob. Emerging Credit Master Fund Ltd.,
  458 B.R. 63 (Bankr. S.D.N.Y. 2011)......................................................................23

01:19474255.1

Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),
    714 F.3d 127 (3d Cir. 2013)............................................................................23

In re Nortel Networks UK Ltd.,
    Case No. 09-11972 (KG) (Bankr. D. Del. Oct. 27, 2010) ......................................34

In re Octaviar Administration Pty Ltd.,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014)..............................................................15

In re Rock Well Petroleum (U.S.), Inc.,
    Case No. 08-20797 (Bankr. D. Wyo. Feb. 27, 2009) ...........................................26

In re Shelton,
    No. 01-20655, 2001 Bankr. LEXIS 2213 (Bankr. D. Idaho Oct. 12, 2001) ...........14

In re SPhinX, Ltd.,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) ..............................................................41

In re Tembec Indus., Inc.,
    Case No. 08-13435 (RDD) (Bankr. S.D.N.Y. Oct. 31, 2008) ...............................19

U.S. v. Bell,
    414 F.3d 474 (3d Cir. 2005)............................................................................35

Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.,
    825 F.2d 709 (2d Cir. 1987)............................................................................36

**Statutes**

8 Del. C. § 169 ..............................................................................................14

11 U.S.C. § 101(23) ...................................................................................15, 17

11 U.S.C. § 101(24) ................................................................................8, 11, 19

11 U.S.C. § 101(41) .......................................................................................19

11 U.S.C. § 105(a) ....................................................................................33, 34

11 U.S.C. §105(a), 1507, 1521 ...........................................................................8

11 U.S.C. § 105(a), 1519(a), and 1521(a)(7)........................................................32

11 U.S.C. § 362 ......................................................................................... *passim*

11 U.S.C. § 362, 365, 365(e) ..........................................................8, 33, 34, 36 38

11 U.S.C. § 365(e) ..................................................................................... *passim*

11 U.S.C. § 1501 ....................................................................................................... *passim*

11 U.S.C. §1501(a) ................................................................................................... 28

11 U.S.C. § 1501(a)(1)–(5) ....................................................................................... 41

11 U.S.C. § 1501(a)(3) ............................................................................................. 21

11 U.S.C. § 1501(b)(1) ............................................................................................. 13

11 U.S.C. § 1502(2) .................................................................................................. 26

11 U.S.C. § 1502(4) ............................................................................................. 22, 25

11 U.S.C. § 1502(5) .................................................................................................. 25

11 U.S.C. § 1504 ...................................................................................................... 20

11 U.S.C. § 1506 ...................................................................................................... 27

11 U.S.C. § 1509 ...................................................................................................... 20

11 U.S.C. § 1515 ..................................................................................... 12, 20, 21, 27

11 U.S.C. § 1515(a) .................................................................................................. 20

11 U.S.C. § 1515(b), (c) ........................................................................................... 20

11 U.S.C. § 1516(c) ............................................................................................. 21, 22

11 U.S.C. § 1517 ........................................................................................ 8, 12, 27, 34

11 U.S.C. § 1517(a) .................................................................................................. 27

11 U.S.C. § 1517(b)(1) ......................................................................................... 22, 25

11 U.S.C. § 1517(b)(2) ......................................................................................... 26, 27

11 U.S.C. § 1519 .............................................................................. 12, 32, 34, 35, 40

11 U.S.C. § 1519(a) .................................................................................................. 33

11 U.S.C. § 1520 .............................................................................. 25, 31, 32, 39

11 U.S.C. § 1521 .............................................................................. 31, 32, 34, 39

11 U.S.C. § 1521(a)(7) ........................................................................... 31, 33, 36

11 U.S.C. § 1522(a) ............................................................................................. 40, 41

01:19474255.1

iv

11 U.S.C. § 1525 ..................................................................................................42

28 U.S.C. § 1410 ........................................................................................13, 14, 15

28 U.S.C. § 1410(3) .........................................................................................14, 15

*Companies' Creditors Arrangement Act* .............................................................25

*Canada Business Corporations Act*, R.S.C. 1985, c. C-44...................................8

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977)..................................40

H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005) .....................................40

Model Law .............................................................................................................41

UNCITRAL Model Law.........................................................................................28

Catalyst Paper Corporation ("CPC" or "Catalyst") is the authorized foreign representative (the "Foreign Representative") for itself and its above-captioned debtor affiliates (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company") in a proceeding (the "CBCA Proceeding") under Section 192 of the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44 (as amended, the "CBCA") before the Supreme Court of British Columbia (the "Canadian Court").[2]  On the date hereof, the Foreign Representative commenced these chapter 15 cases (collectively, the "Chapter 15 Cases") by filing chapter 15 petitions and filing a verified petition (the "Verified Petition"), requesting entry of a final order (the "Recognition Order"), after a notice and a hearing, (i) recognizing the CBCA Proceeding as a foreign main proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) recognizing CPC as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the CBCA Proceeding; (iii) giving full force and effect in the United States to any and all orders that have been or will be made or entered in the CBCA Proceeding, including without limitation the Preliminary CBCA Order (as defined herein) and any forthcoming interim order and final order approving the restructuring transaction to be effected through the CBCA "arrangement" (collectively, the "Canadian Orders"), including any extensions or amendments thereof authorized by the Canadian Court; (iv) applying section 365(e) of the Bankruptcy Code in these Chapter 15 Cases pursuant to sections 105(a), 1507 and 1521 of the Bankruptcy Code; and (v) granting such other and further relief as this Court deems just and proper.  Concurrently with the commencement of the Chapter 15 Cases, the Foreign Representative has filed a motion requesting entry of a provisional order (the "Provisional Relief Motion") granting an interim stay of execution against the Debtors' assets in the United States and applying sections 362 and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition or the Gibson Declaration.

365(e) of the Bankruptcy Code in the Chapter 15 Cases (the "Provisional Relief Order").  The

Foreign Representative respectfully submits this Memorandum of Law in support of the Verified

Petition and the Provisional Relief Motion.

### PRELIMINARY STATEMENT

1.        CPC, the ultimate parent company of all of the Debtors, is a publicly traded

company incorporated under the CBCA which, through its 23 direct and indirect subsidiaries and

a general partnership interest, produces and sells pulp and paper products in North America,

Asia, Australia, and Latin America.  Headquartered in Richmond, British Columbia, the Debtors

are a consolidated business enterprise comprised of various manufacturing, sales, and

distribution facilities and offices in Canada and the United States that are operationally and

functionally integrated.  The Debtors are the largest producer of mechanical printing papers in

Western North America and the largest producer of coated groundwood paper in North

America.  CPC and certain of its wholly-owned direct and indirect subsidiaries, including the

Chapter 15 Debtors, commenced the CBCA Proceeding on October 31, 2016.

2.        The Recapitalization Plan. On October 30, CPC entered into a support agreement

(the "Support Agreement") with three of its principal stakeholders holding or controlling

approximately 69.6% of its outstanding common shares and approximately 86.7% of the

outstanding Secured Notes (collectively, the "Supporting Securityholders") pursuant to which

the Supporting Securityholders have agreed to support a recapitalization transaction (the

"Recapitalization Transaction").  The principal terms of the Recapitalization Transaction include

that:

- existing Secured Notes (including interest scheduled to be paid on November 1) with
  an aggregate principal amount outstanding of US$260.5 million would be exchanged
  for interests in a new 5-year US$135 million term loan plus common shares of CPC
  representing 95% of the outstanding number thereof after giving effect to such

conversion;

- existing credit facilities would remain in place subject to certain amendments, including extension of maturities, all conditioned upon the agreement of the ABL Lenders and Term Loan Lenders;

- CPC and the Supporting Securityholders would cooperate to structure/negotiate the terms by which certain of the common shares not held by such Supporting Securityholders would be exchanged for cash consideration payable by CPC or otherwise repurchased by CPC, subject to certain conditions (completion of any such exchange would not be a condition to the Recapitalization Transaction); and

- all other obligations of CPC, including to its trade creditors, suppliers, customers and employees would remain unaffected and would be paid or satisfied in the ordinary course.

The Support Agreement also permits CPC to terminate the Support Agreement if its Board of Directors determines that, as a result of its fiduciary duties or other legal requirements, it does not intend to, and/or will not, approve or cause to permit CPC to pursue or consummate the Recapitalization Transaction.

3.    The Potential Acquisition Plan.  As described further below, CPC and the Principal Securityholders (including the Supporting Securityholders) also have been and continue to be in discussions with Kejriwal Group International ("KGI") in connection with a potential acquisition transaction (the "KGI Acquisition").  If and when an agreement between Catalyst and KGI is reached, Catalyst may choose to submit concurrently a plan of arrangement involving the KGI Acquisition (the "Acquisition Plan") and the Recapitalization Plan (defined below).  In such a scenario, it is expected that the Recapitalization Plan would become an alternative to the Acquisition Plan and would only be implemented in the event that the KGI Acquisition was not completed.

4.    The CBCA Proceeding.  The primary purpose of the CBCA Proceeding is to effect the Recapitalization Transaction through a plan of arrangement (the "Recapitalization

Plan"), consistent with the requirements of the CBCA.  Similar to a "prepackaged" case in the United States, the Recapitalization Plan impacts only the Secured Note holders and equity holders, and is a largely consensual transaction.[3]  The claims of all other creditors, including employees, trade vendors, contract counterparties and litigants, are unaffected by the Recapitalization Plan (and also would be unaffected by the Acquisition Plan) and CPC will continue to pay such creditors in the ordinary course.

5.      The Chapter 15 Cases.  The Foreign Representative has commenced the Chapter 15 Cases to request the assistance of this Court in giving effect in the United States to the CBCA Proceeding and the Canadian Orders and to assist the Canadian Court in connection with the restructuring of the Debtors.  The Canadian Orders should be recognized and enforced in the United States in order to eliminate the risk of litigation in the United States by certain creditors in contravention of the Canadian Orders and to permit the orderly implementation of the CBCA Proceeding and, ultimately, any plan of arrangement approved by the Canadian Court.  By the Verified Petition, the Foreign Representative requests the assistance of this Court to promote the finality of the restructuring by: (a) recognizing the CBCA Proceeding as a foreign main proceeding, or in the alternative, recognizing the CBCA Proceeding as a foreign main proceeding with respect to the Canadian Debtors and recognizing the CBCA Proceeding as a "foreign nonmain proceeding" with respect to the U.S. Debtors; (b) recognizing CPC as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the CBCA Proceeding; (c) giving full force and effect in the United States to the plan of arrangement and the Canadian Orders pursuant to the CBCA Proceeding (as may be extended, modified or amended by the Canadian Court); and (d) granting certain related relief.

---

[3] The extensions of, and related amendments to, the ABL Facility and Term Loan, which are required by the Recapitalization Plans would be a condition of the transaction and completed on a fully consensual basis.

01:19474255.1

6.      As set forth below, this Court should recognize the CBCA Proceeding and any relief granted to the Foreign Representative pursuant to chapter 15 of the Bankruptcy Code.  The Verified Petition and the Provisional Relief Motion satisfy all of the requirements as set forth in sections 1515, 1517, and 1519 of the Bankruptcy Code.  Specifically, the CBCA Proceeding is being adjudicated before the Canadian Court and involves a company incorporated, headquartered and primarily operated in Canada, and the Foreign Representative is duly authorized to seek recognition of the CBCA Proceeding and enforcement of the Recapitalization Plan and Canadian Orders.  Enforcing the Recapitalization Plan and the Canadian Orders in the United States following recognition of the CBCA Proceeding is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15.  Granting the relief sought in the Verified Petition and the Provisional Relief Motion will best ensure the efficient administration of the CBCA Proceeding, the completion of the Company's restructuring of its debts, and the fair and equal treatment of the Debtors' Canadian and U.S. creditors.  Simply put, absent the relief requested by the Foreign Representative in these Chapter 15 Cases, the effects of the CBCA Proceeding will be undermined, the Debtors' restructuring efforts will be jeopardized, and the Debtors and their creditors may suffer irreparable harm.

## FACTUAL BACKGROUND

7.      For a more complete description of the Debtors' business, corporate organization, debt structure, and circumstances leading to the CBCA Proceeding and the Chapter 15 Cases, the Court is respectfully referred to (a) the Verified Petition, (b) the *Declaration of Stew Gibson in Support of Chapter 15 Petitions and First Day Pleadings* (the "Gibson Declaration"), and (c) the *Declaration of Guy P. Martel in Support of Verified Petition for Recognition and Chapter 15 Relief* (the "Martel Declaration"), each of which is filed concurrently herewith and is

01:19474255.1

incorporated herein by reference.  The Verified Petition and the Gibson Declaration contain the

relevant facts for the purposes of this Memorandum of Law.

## ARGUMENT

**A.     The CBCA Proceeding Is Entitled to Recognition as a Foreign Main Proceeding.**

> **1.     The Chapter 15 Cases Satisfy the Requirements for Recognition Under Chapter 15 of the Bankruptcy Code.**

8.     The Chapter 15 Cases satisfy the requirements for recognition as a foreign

proceeding by the Court.  First, venue is proper in this District because certain of the Debtors'

principal assets in the United States are located in Delaware and the Delaware venue is

consistent with the "interests of justice" and the "convenience of the parties."  See 28 U.S.C.

§ 1410.  Second, chapter 15 of the Bankruptcy Code applies where a foreign representative seeks

the assistance of a United States bankruptcy court in connection with a foreign proceeding.  See

11 U.S.C. § 1501(b)(1).  As discussed herein, the Chapter 15 Cases satisfy the requirements for

recognition of a foreign proceeding because (a) the CBCA Proceeding is a "foreign proceeding,"

(b) the Chapter 15 Cases were commenced by a duly authorized "foreign representative," (c) the

Verified Petition and all required supporting documentation was properly filed, and (d) the relief

sought by the Verified Petition is consistent with the objectives of chapter 15.

> **a.     Venue Is Proper in this District.**

9.     Section 1410 of title 28 of the United States Code instructs that venue of a case

brought pursuant to chapter 15 of the Bankruptcy Code may be commenced in the district

> (1) in which the debtor has its principal place of business or principal assets in the United States;
>
> (2) if the debtor does not have a principal place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in Federal or State court; or

> (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

28 U.S.C. § 1410.

10.     As detailed further in the Verified Petition and the Gibson Declaration, certain of the Debtors' principal assets in the United States are located in this District.  For certain other of the Debtors, venue in this District serves the interests of justice and provides convenience for the parties, consistent with the requirements of 28 U.S.C. § 1410(3).

11.     A debtor has "principal assets" in a district if it has more than half of its assets in such district.  See Bavelis v. Doukas (In re Bavelis), 453 B.R. 832, 869 (Bankr. S.D. Ohio 2011) (holding that a debtor had principal assets in the Southern District of Ohio where "more than 50% of [its] assets" were located in such district); In re Shelton, No. 01-20655, 2001 Bankr. LEXIS 2213, at *19 n.15 (Bankr. D. Idaho Oct. 12, 2001) (noting that principal assets requirement is met by "a simple determination of where the greater dollar value of all property of the estate is located"); Frank v. Neufeld (In re Neufeld), No. 12-02177, 2012 Bankr. LEXIS 5430 (Bankr. M.D. Pa. Nov. 16, 2012) (same).  But cf. In re Mid Atl. Retail Grp., Inc., No. 07-81745, 2008 Bankr. LEXIS 790 (Bankr. M.D.N.C. Jan. 4, 2008) (ruling that principal assets existed in a judicial district even when debtor only had 19% of its assets in the district).

12.     As described in the Gibson Declaration, Debtor CPC's primary asset in the United States is its 100% equity ownership of Debtor Catalyst Paper Holdings Inc. ("Catalyst Paper Holdings"), a Delaware holding corporation through which the Debtors conduct substantially all of their operations in the United States through certain operating subsidiaries.  Pursuant to applicable Delaware law, the Debtors' ownership of the stock of Catalyst Paper Holdings is considered located in Delaware for venue purposes.  See 8 Del. C. § 169 ("For all purposes of

title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State."); see also In re Global Ocean Carriers Ltd., 251 B.R. 31, 38 (Bankr. D. Del. 2000) (concluding that under Delaware law, a chapter 11 debtor that owned the capital stock of a Delaware corporation owned property in Delaware). The Debtors also collectively hold an interest in a $50,000 retainer that is held by Debtors' counsel in a Delaware bank account on behalf of all the Debtors associated with this matter.[4] Gibson Declaration ¶ 12. Therefore, CPC and Catalyst Paper Holdings have their principal U.S. assets in Delaware, and venue for each of the Debtors is proper in Delaware pursuant to section 1410 of title 28 of the United States Code.[5]

### b.   The CBCA Proceeding Is a "Foreign Proceeding."

13.    The CBCA Proceeding is a "foreign proceeding" as defined in the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). Caselaw has parsed this definition into seven elements:

> (i) a proceeding;

> (ii) that is either judicial or administrative;

---

[4] See, e.g., In re Indep. Eng'g Co., 232 B.R. 529, 533 (B.A.P. 1st Cir.) (holding that corporate debtor retained an interest in the unearned portion of its attorneys' retainer as of the commencement of the debtors' chapter 11 case such that the retainer became property of the estate); In re Octaviar Administration Pty Ltd., 511 B.R. 361, 373–74 (Bankr. S.D.N.Y. 2014) (noting that a chapter 15 debtor had property in the United States in the form of a retainer prior to filing a chapter 15 petition); In re Global Ocean Carriers Ltd., 251 B.R. 31 (Bankr. D. Del. 2000) (holding that chapter 11 debtors had interest in escrow funds paid as a retainer to U.S. counsel).

[5] Given the decentralized nature of the U.S. Debtors' operations in the United States across multiple states, the Foreign Representative submits that venue in this District is also consistent with the interests of justice and the convenience of the parties pursuant to 28 U.S.C. § 1410(3). Further, venue in this District comports with the expectations of creditors given the Debtors' previous 2012 Chapter 15 Proceeding, discussed in greater detail and defined herein.

(iii) that is collective in nature;

(iv) that is in a foreign country;

(v) that is authorized or conducted under a law related to insolvency or the adjustment of debts;

(vi) in which the debtor's assets and affairs are subject to the control and supervision of a foreign court; and

(vii) which proceeding is for the purpose of reorganization.

In re Irish Bank Resolution Corp. Ltd., No. 13-12159 (CSS), 2014 WL 9953792, at *12 (Bankr. D. Del. Apr. 30, 2014), aff'd, 538 B.R. 692 (D. Del. 2015) (quoting In re Betcorp Ltd., 400 B.R. 266, 285 (Bankr. D. Nev. 2009)).

14.     The Debtors commenced the CBCA Proceeding on October 31, 2016 and, on the same day, obtained the Preliminary CBCA Order from the Canadian Court officially commencing the CBCA Proceeding and granting certain relief (the "Preliminary CBCA Order"). As discussed in the Martel Declaration, the CBCA Proceeding is a judicial proceeding brought under the CBCA in British Columbia, Canada and is supervised by the Canadian Court. The arrangement provisions of the CBCA allows CBCA companies to carry out a wide array of novel, complex or unique transactions by way of a plan of arrangement. CBCA arrangement provisions have been used as a controlled reorganization procedure that enables financially distressed companies to restructure and/or compromise certain debt obligations in order to maximize the company's value as a going concern for the benefit of creditors and other parties in interest. The CBCA includes provisions that permit arrangements that provide for the adjustment of debt under which companies may effect reorganizations.

15.     Here, the CBCA Proceeding involves an arrangement that restructures the claims and interests of Noteholders and the equity holders of CPC with the oversight of the Canadian Court. Like certain "prepackaged" bankruptcy cases in the United States, the claims of all

other creditors, including employees, litigants, trade vendors, licensors and other contract

counterparties are unaffected by the Recapitalization Plan.  Accordingly, the Company will

continue to pay such creditors in the ordinary course.

16.    Furthermore, the Recapitalization Plan under the CBCA Proceeding is

"collective" in nature because it "typically requires the approval of the corporation's board of

directors and any affected stakeholders (depending on the circumstances, the shareholders, or

other security-holders of the corporation), and must be judicially determined to be 'fair and

reasonable' to be approved by a Court."  Martel Declaration ¶ 9; In re ABC Learning Ctrs. Ltd.,

445 B.R. 318, 328 (Bankr. D. Del. 2010) ("A proceeding is collective if it considers the rights

and obligations of all creditors."), aff'd, 728 F.3d 301 (3d Cir. 2013); In re British Am. Ins. Co.,

425 B.R. 884, 902 (Bankr. S.D. Fla. 2010) ("For a proceeding to be collective within the

meaning of section 101(23), it must be instituted for the benefit of creditors generally rather than

for a single creditor or class of creditors.").  Courts addressing whether a proceeding is

"collective" look to such proceeding's consideration of creditors in general.  In contrast, non-

collective proceedings such as foreclosure proceedings, for example, are instituted to protect the

rights of a single, secured creditor.  In re Betcorp Ltd., 400 B.R. 266, 281 (Bankr. D. Nev. 2009);

see In re ABC Learning Ctrs., 445 B.R. at 334–35 (using the term "all creditors" to mean

creditors in general).  Thus, provided that a proceeding "contemplates both the consideration and

eventual treatment of claims of various types of creditors, as well as the possibility that creditors

may take part in the foreign action," it is "collective" in nature.  In re British Am. Ins. Co., 425

B.R. at 902; see In re British Am. Isle of Venice (BVI), Ltd., 441 B.R. 713, 717–18 (Bankr. S.D.

Fla. 2010) (holding that proceeding was collective in nature where all creditors had a right to be

heard).

01:19474255.1

15

17.     As detailed in the Martel Declaration, the Canadian Court establishes and

supervises the arrangement approval process during the pendency of the CBCA Proceeding.

Any party in interest seeking to object to the arrangement may appeal to, and obtain relief from,

the Canadian Court.  The Canadian Court, through the CBCA Proceeding, is properly exercising

its jurisdiction over the Canadian Debtors and the U.S. Debtors, as provided under section 192 of

the CBCA.  Pursuant to the CBCA, the Debtors have obtained from the Canadian Court the

Preliminary CBCA Order, in which the Canadian Court concludes that the Canadian Debtors and

U.S. Debtors are "party to [the CBCA] proceedings," and grants a stay for the protection of all of

the Debtors and their assets.  Preliminary CBCA Order ¶¶ 5–7.  Therefore, the Canadian Court is

clearly exercising "control or supervision" over the affairs of the Debtors, for the purpose of

furthering the reorganization of CPC and its subsidiaries.  Further orders entered after application

to the Canadian Court will specify such items as the manner for calling and holding a special

meeting of the stakeholders (e.g., distribution of proxy materials, notice periods, and time and

place of meeting), the persons entitled to vote at the meeting, the classes of persons entitled to a

separate class vote, and the acceptance thresholds for approval of the CBCA arrangement.

18.     Additionally, in the Preliminary CBCA Order, the Canadian Court specifically

requests the assistance of the U.S. courts in carrying out the terms of the CBCA Proceeding:

> This Court hereby requests the aid and recognition of . . . any court
> or any judicial, regulatory or administrative body of the United
> States, any state thereof or any other country in the aid of and to
> assist this Court in carrying out the terms of this [Preliminary
> CBCA] Order. All courts, tribunals, regulatory and administrative
> bodies are hereby respectfully requested to make such orders and
> to provide such assistance to the Catalyst Parties as may be
> necessary or desirable to give effect to this [Preliminary CBCA]
> Order, to grant representative status to any of the Catalyst Parties
> in any foreign proceedings, or to assist the Catalyst Parties and
> their respective agents in carrying out the terms of this
> [Preliminary CBCA] Order.

Preliminary CBCA Order ¶ 12.

19.     Moreover, courts in this and other districts have previously recognized that a

Canadian restructuring proceeding under the CBCA constitutes a "foreign proceeding."[6]

Accordingly, the CBCA Proceeding qualifies as a "foreign proceeding" under the Bankruptcy

Code.

### c.     CPC Is a Proper "Foreign Representative."

20.     The term "foreign representative" is defined in section 101(24) of the Bankruptcy

Code as follows:

> [A] person or body, including a person or body appointed on an
> interim basis, authorized in a foreign proceeding to administer the
> reorganization or the liquidation of the debtor's assets or affairs or
> to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  The Preliminary CBCA Order specifically authorizes the Foreign

Representative to commence the Chapter 15 Cases to assist the Debtors and the Canadian Court

in the Debtors' reorganization efforts.  The Foreign Representative, a person within the meaning

of section 101(41) of the Bankruptcy Code, was duly appointed by the Canadian Court to act as

the Foreign Representative pursuant to paragraph [13] of the Preliminary CBCA Order, which

provides as follows:

> Catalyst is authorized to act as the representative or foreign
> representative (the "Foreign Representative") of any of the
> Catalyst Parties in connection with these proceedings and with
> carrying out the terms of this [Preliminary CBCA] Order, for,
> among other things, the purpose of having these proceedings
> recognized in any other jurisdiction whether in or outside of
> Canada, as necessary, the Foreign Representative is hereby
> authorized to apply for foreign recognition of these proceedings, as
> necessary, in any jurisdiction outside of Canada.

---

[6] See, e.g., In re Essar Steel Algoma Inc., Case No. 14-11730 (BLS) (Bankr. D. Del. Aug. 22, 2014); In re Mega
Brands Inc., Case No. 10-10485 (CSS) (Bankr. D. Del. Mar. 23, 2010); In re Tembec Indus., Inc., Case No. 08-
13435 (RDD) (Bankr. S.D.N.Y. Oct. 31, 2008).

<u>See</u> Preliminary CBCA Order ¶ 13.

21.     Furthermore, "[s]ection 1516(a) of the Bankruptcy Code allows a court to presume that the foreign proceeding is such if the foreign court's order states that it is a foreign proceeding and that the appointed person or entity is a foreign representative." <u>In re Innua Canada Ltd.</u>, No. 09-16362 (DHS), 2009 WL 1025090, at *4 (Bankr. D.N.J. Apr. 15, 2009) (citing 11 U.S.C. § 1516(a)).  Accordingly, CPC is a proper "foreign representative" under the Bankruptcy Code.

### d.     The Foreign Representative Filed Proper Documentation.

22.     The Chapter 15 Cases were duly and properly commenced as required by sections 1504 and 1509 of the Bankruptcy Code by the filing of the Chapter 15 Petitions and the Verified Petition under section 1515(a) of the Bankruptcy Code.  <u>See</u> <u>In re Bear Stearns High-Grade Structured Credit  Strategies Master Fund, Ltd.</u>, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

23.     Next, sections 1515(b) and (c) of the Bankruptcy Code require that a chapter 15 petition be accompanied by

> (i) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative; (ii) a certificate from the foreign court affirming the existence of the foreign proceeding and the appointed foreign representative; (iii) if the above two are not available, then any other evidence satisfying the court that the foreign proceeding has been commenced and the foreign representative has been appointed; and (iv) a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

<u>In re Innua Canada Ltd.</u>, 2009 WL 1025090, at *3 (citing 11 U.S.C. § 1515(b)–(c)).

24.     In accordance with section 1515(b)(1)–(2) and (c) of the Bankruptcy Code, the

Foreign Representative has submitted evidence of the CBCA Proceeding and the appointment of CPC as the Foreign Representative thereof.  See Chapter 15 Petitions, Item 6, Addendum A.

25.     Further, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative has also filed concurrently herewith the *Statement of Foreign Representative in Support of Chapter 15 Petition for Recognition of Foreign Proceeding* for each of the Debtors, which contains a statement identifying the CBCA Proceeding as the only foreign proceeding currently pending with respect to the Debtors.  See Chapter 15 Petitions, Addendum A.

26.     Because the Foreign Representative has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, the Chapter 15 Cases have been properly commenced.

### e.     The Verified Petition Is Consistent with the Purpose of Chapter 15.

27.     One of the stated objectives of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. § 1501(a)(3).  In addition, chapter 15 aims to provide "greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protect the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses."  In re Innua Canada Ltd., 2009 WL 1025090, at *3 (quoting In re Oversight & Control Comm'n of Avanzit, S.A., 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008)).

28.     The Chapter 15 Cases have been commenced for the purpose of obtaining the assistance of this Court to ensure the effective and economical administration of the CBCA Proceeding by, among other things, restricting the certain of the Debtors' creditors from taking certain actions in the United States that would undermine the unified, collective and equitable

resolution of the Debtors' liabilities in the CBCA Proceeding before the Canadian Court.  <u>See</u>

Gibson Declaration ¶ 8.  In particular, recognition of the CBCA Proceeding furthers the

important objective of protecting and maximizing the Debtors' material assets used in the

Debtors' U.S. business operations. <u>See</u> Gibson Declaration ¶ 8.  As such, the Verified Petition is

consistent with the purpose of chapter 15 and the cross-border coordination it promotes.

> **2.    The CBCA Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code.**

29.    This Court should recognize the CBCA Proceeding as a "foreign main

proceeding" as defined in section 1502(4) of the Bankruptcy Code.  The Bankruptcy Code

provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country

where the debtor has its center of main interests.  <u>See</u> 11 U.S.C. § 1517(b)(1).  While the

Bankruptcy Code does not define "center of main interests," it provides a presumption that,

absent evidence to the contrary, the debtor's headquarters is presumed to be the center of the

debtor's main interests.  11 U.S.C. § 1516(c); <u>see</u> <u>In re Irish Bank</u>, 2014 WL 9953792, at *16

(holding that a debtor's center of main interests was in Ireland where there was no objection or

evidence offered "to rebut the presumption that [the debtor's] 'center of main interests' is in

Ireland"); <u>Bear Stearns</u>, 374 B.R. at 127, 130 (noting that presumption that debtor's center of

main interests is the place of its registered office may be "rebutted by evidence to the contrary").

Additionally, in <u>Bear Stearns</u>, Judge Lifland stated that:

> [v]arious factors could be relevant to such a determination,
> including: the location of the debtor's headquarters; the location of
> those who actually manage the debtor (which, conceivably could
> be the headquarters of a holding company); the location of the
> debtor's primary assets; the location of the majority of the debtor's
> creditors or of a majority of the creditors who would be affected by
> the case; and/or the jurisdiction whose law would apply to most
> disputes.

Id. at 128 (citing In re SPhinX, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).

30.    Courts also take into consideration the expectations of creditors and other interested third parties, as a company's center of main interests must be "ascertainable to third parties." See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 136–38 (3d Cir. 2013) (analogizing a company's principal place of business to its center of main interests); In re Millennium Glob. Emerging Credit Master Fund Ltd., 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (same).

31.    Notably, the analysis of a foreign debtor's center of main interests is a flexible one, as "courts do not apply any rigid formula or consistently find one factor dispositive." In re Betcorp Ltd., 400 B.R. at 290.  When applying this totality of the circumstances test, courts "generally equate the center of main interests with the concept of a 'principal place of business' under United States law." See, e.g., In re Millenium Glob., 458 B.R. at 72 (noting that "plain English" meaning of "center of main interests" in American jurisprudence is "principal place of business" and that courts have used such terms "interchangeably").

32.    The center of main interests for the Debtors' enterprise is clearly in British Columbia, Canada.  Richmond, British Columbia, part of the Greater Vancouver Regional District, is the location of the Debtors' headquarters and is the nerve center of the Debtors' management, business, and operations.  Gibson Declaration ¶ 31.  Three of the five mills operated by the Debtors are also located in the province of British Columbia.[7]  The Debtors and their non-Debtor affiliates are operationally and functionally integrated in many respects, organized under centralized senior management, and are subject to combined cash management

---

[7] The Foreign Representative acknowledges that the Debtors engage in substantial U.S. operations through their mills in Wisconsin and Maine and maintain scattered support centers at various other locations in the United States. Nonetheless, these operations, particularly given their diffuse nature, do not rise to the level of "critical functions" for purposes of finding the Debtors' "center of main interests."

and accounting functions, all based in and overseen from Richmond.  Gibson Declaration ¶¶ 31–33.  The following (non-exhaustive) critical functions are performed for the Debtors and their non-Debtor affiliates out of the Richmond office:

a. the operations of the Company are directed from the Company's head office in Richmond, B.C.;

b. all of the Debtors ultimately report to CPC, which is headquartered at the Company's head office in Richmond;

c. corporate governance for the Company is directed from Canada;

d. the majority of the officers and half of the directors of the U.S. Debtors are based in Richmond;[8]

e. strategic operating decisions and key policy decisions for the Company are made by the Company's staff located in Richmond;

f. the Company's human resources functions are administered from Richmond, and all local human resources staff report into Richmond;

g. the Company's information technology and systems are directed from Richmond;

h. mill management and senior staff of the Company regularly attend meetings in Richmond;

i. all public company reporting and investor relations are directed from Richmond;

j. the Company's chief executive officer (the "CEO") is based in Richmond, and, in addition to the senior management referenced above, all sales, manufacturing, operations, and legal staff report to the CEO; and

k. each of the Debtors has assets in Canada, and all but one[9] of the U.S. Debtors owns and maintains a bank account at a Canadian chartered bank in Vancouver, British Columbia which maintains such funds on deposit.

See Gibson Declaration ¶ 31.

---

[8] Only one member of the senior management team, the head of CPC's sales department, is stationed outside of Richmond, in Seattle, Washington.  Each of the U.S. Debtors has two directors, one of whom is located in Richmond and the other is located in Seattle.

[9] Catalyst Paper Operations Inc. does not maintain a bank account in Canada.

33.     Furthermore, the Preliminary CBCA Order contains an express finding that "British Columbia is the 'Centre of Main Interest' of Catalyst and its affiliates and subsidiaries, including, but not limited, to the Petitioners and Impleaded Parties."  Preliminary CBCA Order ¶ 14.  Canada is thus "ascertainable by third parties" as the Debtors' center of main interests.

34.     Notably, CPC and its affiliates previously filed chapter 15 proceedings in 2012 (the "2012 Chapter 15 Proceeding") in this Court (Case No. 12-10221 (PJW)) to recognize restructuring proceedings commenced in Canada pursuant to the CBCA, which ultimately converted to a proceeding under Canada's *Companies' Creditors Arrangement Act*  (the "2012 Canadian Proceeding").  In the 2012 Chapter 15 Proceeding, jointly administered under Case No. 12-10221 (PJW), this Court entered a final order (i) finding that British Columbia, Canada, was the center of main interest for the debtors, (ii) recognizing the 2012 Canadian Proceeding as "foreign main proceeding," (iii) acknowledging CPC as the duly appointed foreign representative for the 2012 Canadian Proceeding, and (iv) recognizing the plan of arrangement approved and implemented through the 2012 Canadian Proceeding and granting all relief afforded to a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code.  See In re Catalyst Paper Corp., Case No. 12-10221 (Bankr. D. Del. Mar. 5, 2012) [D.I. 89].

35.     Accordingly, given that the CBCA Proceeding is pending in British Columbia, Canada, (the Debtors' center of main interests), the CBCA Proceeding should be recognized as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

**3.     In the Alternative, the CBCA Proceeding Is a "Foreign Main Proceeding" Under the Bankruptcy Code with Respect to the Canadian Debtors, and a "Foreign Nonmain Proceeding" Under the Bankruptcy Code with Respect to the U.S. Debtors.**

36.     In the alternative, this Court should grant the CBCA Proceeding recognition as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code with respect to

the Canadian Debtors, and grant the CBCA Proceeding recognition as a "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code with respect to the U.S. Debtors.  Other courts have granted dual recognition to a foreign proceeding as a main and nonmain proceeding, applying the separate forms of recognition to distinct groups of Debtors which are parties to a single foreign proceeding.  See, e.g., In re Mega Brands Inc., Case No. 10-10485 (CSS) (Bankr. D. Del. Mar. 23, 2010); In re Rock Well Petroleum (U.S.), Inc., Case No. 08-20797 (Bankr. D. Wyo. Feb. 27, 2009).

37.     Even if Canada were not the center of main interests for the U.S. Debtors (which it is), the CBCA Proceeding constitutes at least a "foreign nonmain proceeding" with respect to the U.S. Debtors as defined in section 1517(b)(2) of the Bankruptcy Code.  Pursuant to the Bankruptcy Code, a "foreign nonmain proceeding" is defined as a "foreign proceeding" pending in a country where the debtor has an "establishment" within the meaning of § 1502.  11 U.S.C. § 1517(b)(2).  "Establishment" is broadly defined in the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).

38.     Each of the U.S. Debtors carries out nontransitory operational, managerial, financing, and other economic activities in Canada, as described in detail above.  The U.S. Debtors own and maintain bank accounts at a Canadian chartered bank in Vancouver, B.C., and a majority of the officers and half of the directors for each of the U.S. Debtors permanently reside in Canada.  The U.S. Debtors are operationally and functionally integrated with the Canadian Debtors in many respects.  The U.S. Debtors and the Canadian Debtors are organized under centralized senior management, and the U.S. Debtors are additionally subject to cash management and accounting functions, all based in and overseen from Richmond, B.C., Canada. Gibson Declaration ¶ 31.

01:19474255.1

24

39.     Given the nontransitory nature of the U.S. Debtors' economic activities in Canada, each of the U.S. Debtors has an "establishment" in Canada within the meaning of section 1502(2) of the Bankruptcy Code.  Even if the CBCA Proceeding were not deemed to be a "foreign main proceeding" with respect to the U.S. Debtors, the CBCA Proceeding should alternatively be recognized as a "foreign nonmain proceeding" pursuant to section 1517(b)(2) of the Bankruptcy Code with respect to the U.S. Debtors.

40.     In addition to meeting the requirements of section 1517(b)(2), CPC qualifies as a foreign representative under the Bankruptcy Code and the Verified Petition meets the requirement of Bankruptcy Code section 1515.  Accordingly, the Debtors have met the requirements for recognition under section 1517(a) of the Bankruptcy Code, and, if the Court were not inclined to grant "foreign main proceeding" status with respect to the U.S. Debtors, the Court should alternatively enter an order granting recognition to the CBCA Proceeding as a foreign nonmain proceeding with respect to the U.S. Debtors.  See 11 U.S.C. § 1517 (an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met).

**4.      Recognizing the CBCA Proceeding as a Foreign Main Proceeding Is Consistent with the Purpose of Chapter 15 and Public Policy.**

41.     Recognition of the CBCA Proceeding as a foreign main proceeding is also consistent with the provisions of section 1506 of the Bankruptcy Code, which provides that "[n]othing in [chapter 15] prevents the court from refusing to take an action governed by [chapter 15] if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  The relief requested by the Foreign Representative is not manifestly contrary to, but rather is consistent with, U.S. public policy.

42.     One of the fundamental goals of the Bankruptcy Code is the centralization of

disputes involving the debtor.  See, e.g., In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir.

1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the

debtor, its estate and its reorganization in the Bankruptcy Court . . . .'" (internal citations

omitted)).  Indeed, as one court has noted, "the firm policy of American courts is the staying of

actions against a corporation which is the subject of a bankruptcy proceeding in another

jurisdiction." Cornfeld v. Investors Overseas Servs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y.

1979) (recognizing that Canadian liquidation proceeding would not violate laws or public policy

of New York or the United States).

43.     The CBCA Proceeding is similar to cases under chapter 11 of the Bankruptcy

Code in that it provides for a centralized, court-supervised process whereby a company can

effect corporate reorganization through an "arrangement" transaction with the approval of the

corporation's board of directors and any affected stakeholders.  See Martel Declaration ¶ 9.

Recognizing the CBCA Proceeding and enjoining certain actions or proceedings with respect to

the Debtors and their assets will assist the orderly administration of the Debtors' assets.  Such

orderly administration is demonstrably consistent with the public policy of the United States, as

embodied in the Bankruptcy Code.  Absent the relief requested, U.S. assets of the Debtors may

be prematurely seized, or actions commenced, and the orderly determination of claims in the

foreign proceeding will be rendered impossible.  If creditors unilaterally pursue collection or

enforcement efforts, it could diminish the value of the Debtors' assets and cause significant delay

and disruption to the Debtors' restructuring process.  The purpose of chapter 15 is to prevent

such harm.  See 11 U.S.C. § 1501.  Furthermore, this could result in unnecessary enforcement

costs or the piecemeal disposition of assets to the detriment of the Debtors and their stakeholders.

Avoiding such potential outcomes through the recognition of the CBCA Proceeding and the

enforcement of the Preliminary CBCA Order in the United States is consistent with U.S. public policy, and promotes the public policies embedded in the Bankruptcy Code.

44.    Further, recognition of the CBCA Proceeding would be consistent with the purpose of chapter 15 and its predicate, the UNCITRAL Model Law on Cross Border Insolvency.  Section 1501(a) of the Bankruptcy Code provides, in pertinent part, that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
> (1) cooperation between—
>
> > (A)   courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
> >
> > (B)   the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> (2) greater legal certainty for trade and investment;
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets; and
>
> (5)  facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.

45.    The relief requested by the Foreign Representative is consistent with, and critical to effectuate, the objectives of chapter 15.  First, recognition of the CBCA Proceeding would foster cooperation between courts in Canada and the United States in respect of the Debtors' restructuring.  By granting recognition to the CBCA Proceeding and enforcing the Canadian Orders in the United States, this Court can effectively assist the Canadian Court in the orderly

restructuring of the Debtors' balance sheet.  Certain of the Debtors' creditors would generally be

enjoined from commencing or continuing actions against the Debtors and the assets of the

Debtors, thereby assisting in the uniform resolution of claims against the Debtors.

46.     Second, recognition of the CBCA Proceeding would promote the fair and efficient

administration of a cross-border reorganization procedure that protects the interests of all

creditors and interested parties.  By recognizing the CBCA Proceeding and granting the relief

requested, the process of resolving claims against the Debtors would be centralized in Canada.

Claims would be treated in accordance with a plan of arrangement that comports with Canadian

law, which is substantially similar to U.S. law—and any disputes would be subject to the

uniform jurisdiction of one tribunal, the Canadian Court.  If certain creditors' actions with

respect to the Debtors' United States assets are not effectively stayed, the uniform and orderly

voluntary administration of the Debtors in the CBCA Proceeding will be jeopardized.

47.     Finally, the relief requested would protect the Debtors' assets located in the

United States.  As set forth in greater detail in the Gibson Declaration, the Debtors engage in

substantial U.S. operations and have U.S. creditors in the form of the Noteholders, whose

Secured Notes are governed by U.S. law, and trade vendors.  The Noteholders are being

impaired under the CBCA Proceeding, and while the Debtors believe they have the broad

support of a significant majority of the Noteholders, individual Noteholders may still be able to

take collection or enforcement actions if the CBCA Proceeding is not recognized in the United

States.  Additionally, certain of the Debtors are parties to agreements containing provisions

purporting to allow the counterparties to terminate such agreements upon the filing of a

bankruptcy or similar reorganization proceeding or potential defaults under the indenture for the

Secured Notes and similar events.  These contract counterparties may seek to invoke such

provisions in order to terminate their contracts and avoid their corresponding obligations to the

Debtors.  Gibson Declaration ¶¶ 35–36.  Absent provisional and final relief in aid of foreign

recognition of the CBCA Proceeding, significant assets of the Debtors may be depleted and

available resources may be expended unnecessarily to defend collection and other actions

brought in the United States.  Accordingly, the relief requested would further the objectives of

chapter 15 by assisting the orderly voluntary administration of the Debtors in the CBCA

Proceeding.

> **5.**    **Specific Request for Relief Pursuant to Section 1521 of the Bankruptcy Code Is Warranted and Appropriate.**

48.    In addition to the relief automatically provided by section 1520 of the Bankruptcy

Code upon recognition of a foreign main proceeding,[10] the Foreign Representative requests, in

the event recognition of the CBCA Proceeding is granted, additional relief under section 1521 of

the Bankruptcy Code to assist in the orderly administration of the Debtors' assets.  This includes

the extension of provisional relief under section 1521(a)(6) and the right of the Foreign

Representative to examine witnesses, take evidence or deliver information with respect to the

Debtors' assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4).

49.    The Foreign Representative also submits that recognition and enforcement of the

Canadian Orders under section 1521 is appropriate in these Chapter 15 Cases.  Section 1521 of

the Bankruptcy Code provides a general grant of authority that "[u]pon recognition of a foreign

proceeding . . . where necessary to effectuate the purpose of this chapter and to protect the assets

---

[10] Upon recognition of the CBCA Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right, including a stay that enjoins actions against the Debtors and otherwise protects the Debtors.  See 11 U.S.C. § 1520.  In particular, upon the Court's recognition of the CBCA Proceeding as a foreign main proceeding, section 1520(a)(1) of the Bankruptcy Code triggers the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the Debtors.  In the alternative, upon recognition of the CBCA Proceeding as both a foreign main proceeding and a foreign nonmain proceeding, the Foreign Representative requests the implementation of relief under section 1520 of the Bankruptcy Code to the Debtors, to the extent not already applicable, through the operation of section 1521 of the Bankruptcy Code.

of the debtor or the interests of any creditors, the court may grant any appropriate relief," 11

U.S.C. § 1521(a), and also sets forth a non-exhaustive list of specific types of relief the court

may grant a foreign representative.  See, e.g., 11 U.S.C. § 1521(a)(1) (staying commencement or

continuation of actions); § 1521(a)(2) (staying execution against debtor's assets); § 1521(a)(5)

(entrusting administration or realization of debtor's assets within United States); § 1521(a)(7)

(any additional relief).

50.     Most, if not all, of the relief to be provided in the Canadian Orders is available

under section 1521 of the Bankruptcy Code.  To the extent not otherwise stayed under sections

1520 and 362 of the Bankruptcy Code), the Foreign Representative requests that the Court, in its

discretion under section 1521 of the Bankruptcy Code, extend any provisional or final relief

provided in the Canadian Orders against any parties that may attempt to commence actions or

claims in the United States with respect to the Secured Notes or purport to terminate contracts

based on the commencement of these Chapter 15 Cases.  This will help ensure the fair and

efficient administration of the CBCA Proceeding, which aims to protect all parties in interest by

requiring that all creditors of the Debtors be bound by the terms of the CBCA Proceeding so that

certain creditors do not gain an unfair advantage through extrajudicial action.

**B.      The Provisional Relief Requested by the Foreign Representative Is Within the Scope of Section 1519 of the Bankruptcy Code and Is Appropriate Under the Circumstances.**

51.     Pursuant to the Provisional Relief Motion, the Foreign Representative also seeks

entry of an order (i) applying section 362 of the Bankruptcy Code to the indenture trustee for the

Secured Notes (as defined in the Gibson Declaration) and the Noteholders to prevent them from

seeking payment of the November 1 Interest Payment (as defined in the Gibson Declaration) or

otherwise seeking payment on the Secured Notes and (ii) applying section 365(e) of the

Bankruptcy Code in these Chapter 15 Cases to the Debtors' executory contracts, all on an interim

basis pursuant to sections 105(a), 1519(a), and 1521(a)(7) of the Bankruptcy Code.  The Foreign

Representative believes that application of these provisions in these cases is crucial to prevent

irreparable injury to the value of the Debtors' assets by not subjecting them to diminution in

value resulting from the collection or enforcement of efforts of creditors or contract termination

prior to the disposition of the Verified Petition.  Accordingly, and as described more fully in the

Provisional Relief Motion and the Gibson Declaration, the Foreign Representative believes the

provisional application of sections 362 and 365(e) is necessary to protect against the disruption

to business operations and interference with reorganization efforts that would result from such

exercise of remedies by contract counterparties and others.

1.     **The Relief Requested Is Authorized by Sections 1519(a)(1)–(a)(3), 1521(a)(7), and 105(a).**

52.     Section 1519(a) of the Bankruptcy Code authorizes the Court to grant, on a

provisional basis, any relief available under section 1521(a)(7).  Section 1521(a)(7) in turn

provides for any relief available to a trustee, subject to certain statutory exceptions not relevant

here.  See 11 U.S.C. § 1521(a)(7).  The automatic stay in section 362 of the Bankruptcy Code is

an essential feature of U.S. bankruptcy law and is replicated, sometimes automatically and

sometimes as a matter of discretion, in jurisdictions that share common law restructuring

principles, such as Canada and the United Kingdom.  See, e.g., David P. Stromes, The

Extraterritorial Reach of the Bankruptcy Code's Automatic Stay, 33 Brook. J. Int'l L. 276, 299

(2007) (discussing the statutory stay moratorium that goes into effect once insolvency

administration begins in the United Kingdom).  Similarly, section 365(e) of the Bankruptcy

Code, which provides invaluable protection to the Debtors from the termination of contracts

based solely on the filing for bankruptcy-related protection, is also similar to relief often

provided in CBCA proceedings.  See, e.g., Declaration of John Ciardullo in Support of Verified

Petition for Recognition and Chapter 15 Relief at 3, In re Essar Steel Algoma Inc., Case No. 14-

11730 (BLS) [D.I. 6] (recognizing the Canadian court's prohibition in an interim order on

enforcement or termination steps under a contract due to the filing of the CBCA proceeding).

Under chapter 15, though such relief is not automatic upon filing, the Court has discretion to

grant such relief on a provisional basis pursuant to sections 1519(a) and 1521(a)(7) of the

Bankruptcy Code.  In addition, section 105(a) of the Bankruptcy Code further allows the Court

to "issue any order . . . necessary or appropriate to carry out the provisions of [title 11]."

11 U.S.C. § 105(a).

       53.     The provisional application of section 362 of the Bankruptcy Code, among others,

has been approved in several cases (including in at least two CBCA proceedings), both within

and outside of this jurisdiction.[11]  Likewise, the provisional application of section 365(e) of the

Bankruptcy Code has also been approved by courts in this jurisdiction.[12]  As further set forth

---

[11] See, e.g., In re Altos Hornos de Mexico, S.A.B. de C.V., Case No. 16-11890 (KG) (Bankr. D. Del. Aug. 17, 2016) (applying section 362 on a provisional basis pursuant to section 1519); In re Essar Steel Algoma Inc., Case No. 14-11730 (KJC) (Bankr. D. Del. July 17, 2014) (applying, pursuant to section 1519, sections 362 and 365(e) on a provisional basis in a CBCA proceeding to protect the debtors' U.S. assets and protect against contract termination); In re Elpida Memory, Inc., Case No. 12-10947 (Bankr. D. Del. Mar. 21, 2012) (applying section 362 of the Bankruptcy Code on a provisional basis to the actions of all creditors against the debtors and their property located within the United States, pursuant to section 1519 of the Bankruptcy Code); In re Catalyst Paper Corp., Case No. 12-10221 (PJW) (Bankr. D. Del. Jan. 19, 2012) (applying sections 362 and 365(e) on a provisional basis in a CBCA proceeding to protect the debtors' U.S. assets and protect against contract termination); In re Arctic Glacier Int'l Inc., Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) (applying sections 108, 362, and 365(e) on a provisional basis pursuant to sections 1519 and 1521 of the Bankruptcy Code); In re Nortel Networks UK Ltd., Case No. 09-11972 (KG) (Bankr. D. Del. Oct. 27, 2010) (granting provisional relief, including protections of automatic stay, against the debtors' assets in the U.S.); In re Innua Canada Ltd., Case No. 09-16362 (DHS) (Bankr. D.N.J. Mar. 25, 2009) (same).

[12] See, e.g., In re Essar Steel Algoma Inc., Case No. 14-11730 (KJC) (Bankr. D. Del. July 17, 2014) (applying, pursuant to section 1519, sections 362 and 365(e) on a provisional basis to protect the debtors' U.S. assets and protect against contract termination); In re Cinram Int'l Inc., Case No. 12-11882 (KJC) (Bankr. D. Del. June 26, 2012) (same); In re Arctic Glacier Int'l Inc., Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) (applying sections 108, 362, and 365(e) on a provisional basis pursuant to sections 1519 and 1521 of the Bankruptcy Code); In re Catalyst Paper Corp., Case No. 12-10221 (PJW) (Bankr. D. Del. Jan. 19, 2012) (applying sections 362 and 365(e) on a provisional basis in a CBCA proceeding to protect the debtors' U.S. assets and protect against contract termination); In re MAAX Corp., Case No. 08-11443 (CSS) (Bankr. D. Del. July 15, 2008) (applying section 365(e) to the debtors' real property leases on a provisional basis pursuant to sections 1519 and 1521(a)(7)).

below, provisional application of sections 362 and 365(e) of the Bankruptcy Code is appropriate

here and is in the best interests of the Debtors and their creditors.

> ### 2.      The Relief Requested Herein Is Necessary and Appropriate to Prevent Irreparable Harm.

54.     Relief under section 1519 of the Bankruptcy Code is available where the foreign

representative can satisfy the standard for injunctive relief.  In the Third Circuit, the four factors

considered for such standard are "(1) whether the movant has shown a reasonable probability of

success on the merits; (2) whether the movant will be irreparably injured by denial of the relief;

(3) whether granting preliminary relief will result in even greater harm to the nonmoving party;

and (4) whether granting the preliminary relief will be in the public interest." U.S. v. Bell, 414

F.3d 474, 478 n.4 (3d Cir. 2005) (citing ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.,

84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc)).

55.     The greater the relative hardship to the party seeking the preliminary relief, the

less probability of success must be shown.  Clear Channel Outdoor, Inc. v. City of L.A., 340

F.3d 810, 813 (9th Cir. 2003).  In the cross-border restructuring context, courts have consistently

recognized that "the premature piecing out of property involved in a foreign liquidation

proceeding constitutes irreparable injury." In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y 1988).

The Foreign Representative submits that this standard is satisfied here and that it is therefore

entitled to the requested provisional relief pursuant to section 1519 of the Bankruptcy Code,

including the entry of the Provisional Relief Order.

> #### a.      Substantial Likelihood of Foreign Recognition.

56.     As set forth above and in the Verified Petition, the Foreign Representative has

provided a solid basis for recognition of the CBCA Proceeding, and has thereby amply

demonstrated a reasonable probability that such proceeding will be recognized as a foreign main

proceeding.  Based on the facts that (a) the CBCA Proceeding is pending in Canada, the location

of the Debtors' center of main interest, (b) all proper supporting documentation was filed

contemporaneously with the Verified Petitions, and (c) the Chapter 15 Cases were properly

commenced by a duly appointed Foreign Representative, there is a high likelihood that

recognition of the CBCA Proceeding as a foreign main proceeding will be granted.

> **b.      The Debtors Will Potentially Suffer Irreparable Injury if the Provisional Relief Order Is Not Entered.**

57.      The Foreign Representative believes that application of provisional relief under

sections 1519(a)(1)–(a)(3) and 1521(a)(7) of the Bankruptcy Code as well as under sections 362

and 365 of the Bankruptcy Code in the Chapter 15 Cases is critical to the prevention of

irreparable damage to the value of the Debtors' assets and business.  The Chapter 15 Cases have

been commenced for the purpose of obtaining the assistance of this Court in respect of the

CBCA Proceeding and to give effect in the United States to the Canadian Orders.  Unless the

Provisional Relief Order is entered to the limited extent requested in these Chapter 15 Cases, the

Debtors face the real possibility of immediate and irreparable harm resulting from the piecemeal

loss of assets from the Trustee or individual Noteholder collection and enforcement efforts and

contract terminations asserted by certain contract counterparties.  The Debtors have substantial

assets in the United States, and failure to promptly enjoin certain collection actions and

termination of U.S. contracts based on the commencement of the CBCA Proceeding or the

Chapter 15 Cases would result in evasion of the terms of the Preliminary CBCA Order and

significant disruption to the Debtors' business.  If any such actions were taken in the United

States, the Debtors would be forced to expend their resources to defend against these suits and/or

contract terminations, regardless of their merit.

58.      With respect to the potential for collection activity by creditors, a number of

courts have recognized the need for provisional relief to prevent individual creditors from taking

extrajudicial advantage of the recognition process.  See Victrix S.S. Co., S.A. v. Salen Dry

Cargo, A.B., 825 F.2d 709, 713-14 (2d Cir. 1987) (harm to an estate exists where the orderly

determination of claims and the fair distribution of assets are disrupted); In re Banco Nacional de

Obras y Servicios Publicos, S.N.C., 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that

injunctive relief is necessary "to prevent individual American creditors from arrogating to

themselves property belonging to the creditors as a group"); In re Lines, 81 B.R. at 270 (stating

that "the premature piecing out of property involved in a foreign liquidation proceeding

constitutes irreparable injury").

59.     Finally, irreparable harm has been found where allowing litigation to go forward

would threaten the assets of a foreign estate, subject a foreign representative to a default

judgment, or divert funds needed for the purpose of maximizing value for the estate's creditors.

See In re Gercke, 122 B.R. 621, 626 (Bankr. D.D.C. 1991).  Here, each of these criteria is

satisfied.  If the limited group of creditors detailed above are not enjoined to the extent sought

herein, the assets of the Debtors located in the United States may be prematurely "pieced out"

and "the orderly determination of claims and the fair distribution of assets" in the foreign

proceeding will be severely disrupted.

60.     If creditors who have not yet consented to the arrangement, or any person acting

on their behalf, are allowed to unilaterally pursue collection or enforcement efforts, contract

termination, or application of setoff, it could diminish the value of the Debtors' U.S. assets and

cause significant delay and disruption to the Debtors' restructuring process.  Further, certain of

the Debtors are parties to U.S. agreements containing so-called "ipso facto" provisions that

purport to allow the parties to terminate such agreements upon the filing of a bankruptcy or

similar reorganization proceeding.  Without the protections afforded by section 365(e) of the

Bankruptcy Code, should such contracts be terminated, the Debtors would lose important rights

and benefits thereunder, to the detriment of the Debtors' businesses and, in turn, their creditors.

Thus, absent the provisional relief requested, the Debtors and their creditors may suffer

irreparable harm.

61.     Without the certainty that the automatic stay and section 365(e) protection can

provide, the Debtors would be at risk of facing collection proceedings, termination of valuable

contracts, and other harmful actions by creditors, potentially causing major disruption to the

Debtors' reorganization taking place in the CBCA Proceeding.  The purpose of chapter 15 is to

prevent such harm.  See 11 U.S.C. § 1501.

> **c.      There Will Be Little to No Harm to Others if the Relief Is Granted.**

62.     In contrast to the hardships described above, preservation of the status quo and

application of sections 362 and 365(e) of the Bankruptcy Code while the Debtors undertake the

reorganization process will not significantly prejudice creditors.  Specifically, the

Trustee/Noteholders and contract counterparties will not be harmed by the requested provisional

relief, as it will merely preserve the status quo and enable the Court to rule on the Petitions.[13]

Pursuant to the CBCA Proceeding, CPC will continue to pay all other creditors, including

employees, trade vendors, contract counterparties and litigants, in the ordinary course, and these

creditors are unaffected by the provisional relief being sought and are not subject to the scope of

the injunction.  Absent this Court's entry of the Provisional Relief Order, the Debtors may be

forced to needlessly expend their limited resources in defense of collection actions by the Trustee

or individual Noteholders, and may need to exert efforts to replace terminated contracts,

---

[13] The proposed Provisional Relief Order approving the Provisional Relief Motion will expressly allow any creditor that believes it has been harmed by the provisional relief granted to file a motion with the Court seeking relief from the Provisional Relief Order.

potentially with less advantageous terms.  At the same time, entry of the Provisional Relief Order

will impose little, if any, hardship on any party.  The hearing on the Recognition Order will

likely be held in approximately 45 days from the date hereof; thus, the narrow requested

provisional relief will only be in place for a limited time and will have little impact on creditors

as a whole if, for some reason that is not anticipated, the Court determines not to grant

recognition to the CBCA Proceeding.  Further, the Provisional Relief Order would not prohibit

termination upon the occurrence of any default under the Debtors' contracts other than those

specifically enumerated in section 365(e) of the Bankruptcy Code.  By contrast, if the provisional

relief sought in the Provisional Relief Motion is not granted, the Debtors are at material risk of

immediate and irreparable harm from the termination of certain contracts or unilateral collection

or enforcement actions by individual Noteholders.

63.     Moreover, upon entry of the Recognition Order granting recognition to the CBCA

Proceeding as a foreign proceeding, sections 1520 and 1521 of the Bankruptcy Code would

implement, among other provisions, the automatic stay of section 362 of the Bankruptcy Code in

the Chapter 15 Cases.  Thus, in the event the Recognition Order is entered, the Foreign

Representative will become entitled to much of the relief provided for by the Provisional Relief

Order.[14]  In addition, the Debtors intend to continue satisfying their obligations on normal trade

terms in the ordinary course of business, so creditors and contract counterparties should not be

materially affected by the ongoing proceedings (if at all).  Individual Noteholders' rights to

initiate piecemeal collection and enforcement actions in the United States and contract

counterparties' rights to terminate contracts or services when the Debtors will be continuing to

---

[14] In the event that the CBCA Proceeding is recognized as a foreign nonmain proceeding with respect to the
U.S. Debtors, the Foreign Representative is alternatively seeking relief under section 1521 of the Bankruptcy Code
that would implement section 1520 of the Bankruptcy Code with respect to the estates of the U.S. Debtors.
Therefore, the Foreign Representative will be seeking relief under section 1520 of the Bankruptcy Code, to the
extent that such relief is not automatically conferred upon certain of the Debtors.

operate in the ordinary course of business should be afforded minimal weight in light of the

CBCA Proceeding, the filing of the Petitions, and the provisional relief requested.

64.     In fact, granting the request for provisional relief will benefit the Debtors'

creditors because it will ensure that actions occurring in the CBCA Proceeding are not disrupted

or compromised and that creditors in Canada and the United States are treated identically.

Indeed, as stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.  Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977).

65.     Furthermore, section 1522(a) of the Bankruptcy Code provides that relief

pursuant to section 1519 is available only if "the interests of creditors and other interested

parties" are "sufficiently protected." See 11 U.S.C. § 1522(a).  Granting recognition to the

CBCA Proceeding and enforcing the Preliminary Interim Order is appropriate because it will

leave the Debtors' creditors and other interested parties "sufficiently protected."  While the

Bankruptcy Code does not explicitly define the meaning of "sufficiently protected" as provided

in section 1522(a), the legislative history indicates that the section was meant to ensure that "the

foreign proceeding [is not] seriously and unjustifiably injuring United States creditors."  H.R.

Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005).  Courts have applied a balancing test that

considers the "interests of the creditors and other interested entities, including the debtor," and

the "weighing of the interests of the foreign representative (debtor) in receiving the requested

relief (the debtor) in receiving the requested relief against the competing interests of those who

would be adversely affected by the grant of such relief" to ensure that creditors are adequately protected.  See Jaffe v. Samsung Elecs. Co., 737 F.3d 14, 29 (4th Cir. 2013); Chen v. Ernst & Young Inc. (In re Nortel Networks Corp.), 2013 U.S. Dist. LEXIS 162887, at *13 (D. Del. Nov. 15, 2013) (describing the balancing test performed by the Bankruptcy Court pursuant to section 1522(a)).

66.    Here, granting the provisional relief providing for the temporary application of sections 362 (to the limited extent requested) and 365(e) of the Bankruptcy Code will ensure that all U.S. creditors are treated uniformly and that a U.S. creditor does not gain an unfair advantage over creditors in Canada through the commencement of collection actions in the United States. Moreover, given the continued payment of trade and unsecured creditors in full in the ordinary course of business during the Chapter 15 Cases, the Foreign Representative submits that creditors are "sufficiently protected" as contemplated by section 1522(a) and that there will be no harm to creditors if the Foreign Representative's request for provisional relief is granted.

> **d.    Granting the Requested Relief Is Manifestly in Line with U.S. Public Policy.**

67.    Granting the provisional relief requested in the Provisional Relief Motion will help advance the purposes of chapter 15 expressly set forth in section 1501 of the Bankruptcy Code.  Unique to the Bankruptcy Code, chapter 15 contains a statement of purpose: "The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency," with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession, and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the

debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses.  11 U.S.C. § 1501(a)(1)–(5); In re SPhinX, Ltd., 351 B.R. at 112; In re Bear Stearns, 374 B.R. at 126.  If the provisional relief sought herein is not granted, the Debtors will be exposed to various risks posed by creditors, as discussed in detail above. Such actions on the part of creditors, and in particular the Noteholders who have not yet consented to the arrangement or any person acting on their behalf, would violate the stay provisions of the Preliminary CBCA Order and thereby interfere with the orderly administration of the CBCA Proceeding, which is exactly the type of harm chapter 15 is intended to prevent. See 11 U.S.C. § 1501.  Accordingly, the provisional relief requested is consistent with the public policy of chapter 15 of the Bankruptcy Code.

68.     In addition, and as set forth above with respect to final recognition of the CBCA Proceeding, the requested provisional relief promotes cooperation between foreign jurisdictions and comity among tribunals.  By its Preliminary CBCA Order, the Canadian Court has requested the assistance of this Court to effectuate its orders in the United States.  See Preliminary CBCA Order ¶ 12.  Accordingly, providing the requested assistance would effectuate the public policy considerations underpinning section 1525 of the Bankruptcy Code which mandates cooperation "to the maximum extent possible" between this Court and a foreign court.  See 11 U.S.C. § 1525.

01:19474255.1

40

WHEREFORE, the Foreign Representative respectfully requests that the Court grant the

relief requested in the Provisional Relief Motion and the Verified Petition, and such other and

further relief as is just and proper.

Dated: November 1, 2016          SIDLEY AUSTIN LLP
Wilmington, Delaware             James F. Conlan (*pro hac vice admission pending*)
                                 Dennis M. Twomey (*pro hac vice admission pending*)
                                 William A. Evanoff (*pro hac vice admission pending*)
                                 Blair M. Warner (*pro hac vice admission pending*)
                                 One South Dearborn Street
                                 Chicago, Illinois 60603
                                 Telephone:  (312) 853-7000
                                 Facsimile:  (312) 853-7036

                                          -and-

                                 YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                 */s/ Matthew B. Lunn*
                                 Edmon L. Morton (No. 3856)
                                 Matthew B. Lunn (No. 4119)
                                 Ashley E. Jacobs (No. 5635)
                                 Rodney Square
                                 1000 North King Street
                                 Wilmington, Delaware 19801
                                 Telephone:  (302) 571-6600
                                 Facsimile:  (302) 571-1253

                                 *Counsel to the Foreign Representative*

01:19474255.1

41